EEOC Form 161 (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Garcia, Rafael
2620 W. Division Street
Apt. 2B
Chicago, IL 60622

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2013-01138 | Daniel Lim, Acting State and Local Coordinator | (312) 869-8082 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*John P. Rowe/IQ*  August 28, 2014

John P. Rowe,
District Director

(Date Mailed)

Enclosures(s)

cc: **MT FOOD SERVICE**
**William Sullivan**
**Treasurer/Owner**
**400 N. Noble Street**
**Chicago, IL 60622**

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF: )
)
RAFAEL GARCIA, )
)
       COMPLAINANT, )    CHARGE NO. 2013CA2356
)    EEOC NO. 21BA31138
AND )
)
MT FOOD SERVICE, )
)
)
       RESPONDENT. )

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Rafael Garcia  
2620 W. Division St.  
Apt. 2B  
Chicago, IL 60622  

William Sullivan, Treasurer/Owner  
MT Food Service, Inc.  
400 N. Noble Street  
Chicago, IL 60622  

DATE OF DISMISSAL: April 14, 2014

1. YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT substantial evidence to support the allegations of the charge(s). Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II, Section 2520.560), the charge is HEREBY DISMISSED.

2. If Complainant disagrees with this action, Complainant may:

   a) Seek review of this dismissal before the Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below. Respondent will be notified by the Human Rights Commission if a Request for Review is filed.

   **REQUEST FOR REVIEW FILING DEADLINE DATE: July 18, 2014**

   Or,

   b) Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed.

Page 2
Notice of Dismissal for Lack of Substantial Evidence
2013CF2356

    **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings.** The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ___, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.     Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a written complaint with the appropriate circuit court.

4.     If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.**

    DEPARTMENT OF HUMAN RIGHTS

HB1509/HB59
NOD/LSE
12/10

# STATE OF ILLINOIS
# DEPARTMENT OF HUMAN RIGHTS
# INVESTIGATION REPORT

**Complainant:** Rafael Garcia  **IDHR No.:** 2013CF2356
**Respondent:** MT Food Service  **EEOC No.:** 21BA31138

**Investigator:** DSB  **Supervisor:** _SWR_  **Date:** 3·31·14

**Issue/Basis:**  **Finding:**

A. Harassment/race, black  A. Lack of substantial evidence
B. Discharge/race, black  B. Lack of substantial evidence
C. Discharge/ancestry, Hispanic  C. Lack of substantial evidence
D. Discharge/retaliation  D. Lack of substantial evidence

**Jurisdiction:**

Alleged violation:  A. October 22, 2010, through February 7, 2013
 B-D: February 5, 2013, corrected from February 7, 2013
Charge filed:  March 5, 2013
Charge perfected:  March 5, 2013
Amendments:  None
Number of employees:  86

**Verified Response:**

Due: May 12, 2013
Received: May 7, 2013
Timely: X  Untimely: ___  **Group Exhibit A**
If untimely, good cause shown: Yes ___ No ___

**Employment Data:**

In response to the Department's questionnaire, Respondent indicated it had 86 employees, 4 (5%) of whom are black. In response to a staff request for information, Respondent indicated that Complainant was one of 23 Truck Drivers employed at the time of the alleged violations. It is uncontested that Complainant was the only black Truck Driver employed at the time.

**Uncontested Facts:**

1. Respondent is a full service food distributor.
2. The majority of Respondent's employees are Hispanic.
3. Complainant was hired as a Truck Driver in October 2010.

Charge No.: 2013CF2356
Page 2 of 9

4. Truck Drivers deliver merchandise which is stacked on pallets. Truck Drivers are expected to return the pallets to Respondent.
5. On February 5, 2012, Complainant returned to Respondent after making his deliveries without any pallets. Complainant was accused of stealing pallets and was discharged.

**Complainant's Allegations-Count A:**

Complainant (black) alleges that between October 22, 2010, and February 7, 2013, his co-workers engaged in at least two incidents of racial harassment which were not trivial in nature in that they called Complainant names like prieto, nigger and crack head. Complainant alleges that management had actual or constructive knowledge of the harassment in that he repeatedly reported the harassment to Melissa Keller and to Steve Miller. Complainant alleges that the harassment created a hostile, intimidating, or offensive work environment and/or substantially interfered with his ability to perform his job.

**Respondent's Defenses-Count A:**

Respondent denies that Complainant brought any alleged concerns of racial harassment to management's attention.

**Investigation Summary-Count A:**

A. **Complainant's Evidence.**

1. Complainant stated that he is half black and half Hispanic. He didn't speak Spanish but he understood some Spanish words. Complainant stated that all of the pickers in Respondent's warehouse were Hispanic. From the day he started, he heard employees in the warehouse saying "prieto", which is a derogatory term for a black person in Spanish. He assumed the comments were directed towards him because there were only three black employees working for Respondent. He also overheard employees referring to him as a "crack head" and as a "nigger". Complainant stated that he couldn't state off the top of his head the date such comments were made or who made the comments. He was not aware of any instances in which management was present when the comments were made.

2. Complainant stated that the majority of his harassment complaints were made in writing. He repeatedly submitted written complaints of racial harassment on the daily route sheets that he submitted to Melissa Keller (white, non-Hispanic) at the end of his route each day. Complainant stated that Keller was in charge of paperwork and was not considered a supervisor or a manager. He verbally discussed the racial harassment with Keller on numerous occasions.

3. Complainant stated that he first complained to Steve Miller (white, non-Hispanic), Dock Manager, about racial harassment from the dock workers in December 2011 or January 2012. He told Miller that the workers were picking on him due to his race and calling him derogatory racial terms. He told Miller about several occasions in 2011 when some unknown person(s) cut the lines to his truck and urinated and defecated in it. Complainant stated that he repeated his complaints

        to Miller about two or three times per week until he stopped talking to Miller in February 2012, because Miller just laughed his complaints off. Complainant stated that his last complaint to Steve Miller was in December 2012, but that complaint had to do with his paycheck and not his race.

B. **Respondent's Evidence.**

1. Steve Miller (white, non-Hispanic), Dock Manager, stated that he didn't know Complainant's race or Complainant's ancestry. Complainant never complained to him of racial harassment and he never witnessed any harassment. Complainant never said anything to him about feces or urine in his truck.

2. William Sullivan (white, non-Hispanic), Treasurer, stated that Complainant's race and ancestry is not visually apparent and that he did not know Complainant's race or ancestry until Complainant filed the instant charge. Sullivan stated that he was not aware of any complaints from Complainant of racial harassment and that Complainant's allegations of sabotage were ludicrous. Sullivan stated that Melissa Keller had no formal job title but she was responsible for checking in drivers and collecting the route sheets they turned in at the end of their shift. Keller turned the route sheets in to Dan Sullivan (white, non-Hispanic), Controller. William Sullivan stated that Dan Sullivan was considered a management employee but Melissa Keller was not management.

3. Marc Troop (white, non-Hispanic), President, stated that he had no knowledge of Complainant's alleged complaints of racial harassment.

4. Dan Sullivan stated that he was not aware of any notes regarding alleged discrimination on Complainant's route sheets.

C. **Complainant's Rebuttal.**

1. Complainant stated that people could visually tell that his race was black and that his ancestry was Hispanic.

**Staff notes:**

1. A review of Complainant Complainant's daily route sheets for the period between February 8, 2012, and February 7, 2013, show no evidence of any complaint of harassment (**Group exhibit K**).
2. In response to the Department's questionnaire, Respondent indicated that Complainant had no written job description.
3. In response to the Department's questionnaire, Respondent indicated it had no written policy regarding harassment.

**Analysis:**

Complainant alleges that pickers in Respondent's warehouse harassed him due to his race by using a derogatory term (in Spanish) for black people, and by referring to him as a "crack head"

and a "nigger". Complainant stated that on several occasions in 2011, and unknown person or persons urinated in, defecated in, and cut the lines to his truck. Complainant stated that the majority of his repeated complaints of harassment were done in writing on his daily route sheets. He stated that he discussed his complaints of harassment with Melissa Keller, a non-management employee, on numerous occasions. He further stated that he also complained to Steve Miller about the harassment on a regular basis until he stopped talking to Miller in February 2012.

Steve Miller stated that Complainant never complained to him of racial harassment. A review of Complainant's daily route sheets shows no evidence of written harassment complaints.

Respondent indicated that Complainant's race was not visually apparent and was unknown. Complainant stated that his race was apparent by looking at him.

### Findings and Conclusion-Count A:

A finding of <u>lack of substantial evidence</u> is recommended because:

Complainant fails to meet a prima facie of racial harassment as there is no evidence that Complainant was subjected to misconduct sufficiently severe and pervasive as to alter his conditions of employment or that management had actual or constructive knowledge of alleged misconduct. Documented evidence fails to support Complainant's claim that he repeatedly submitted written complaints of racial harassment. Further, Complainant stated that although the alleged harassment continued through February 7, 2013, he last raised the issue verbally with management in February 2012, a year prior to the date Complainant filed his charge. There is no evidence that Respondent was aware of Complainant's alleged harassment due to his race, black.

### Complainant's Allegations-Counts B and C:

Complainant (black, Hispanic), alleges that his work performance was satisfactory and met Respondent's legitimate expectations. On February 5, 2013, Complainant was discharged. The stated reason for Complainant's discharge was stealing. Complainant alleges that similarly situated non-black employees whose ancestry is not Hispanic who were also accused of stealing were not discharged as he was.

### Respondent's Defenses-Counts B and C:

Respondent denies that Complainant was discharged due to his race or his ancestry and contends that Complainant was discharged for theft.

### Investigation Summary-Counts B and C:

A. **Complainant's Evidence.**

   1. See Count A, Complainant's evidence, 1 through 3.

   2. Complainant stated that when he returned to Respondent after his deliveries on February 7, 2013, Steve Miller asked him where his pallets were and then accused

      him of stealing pallets. He told Miller that he never stole any pallets. Later that day he was told he was being fired for stealing.

3. Complainant stated that he never admitted to stealing pallets. When his truck was loaded it held about 10 pallets of merchandise. Most of the time he left his empty pallets with his customers and loaded them back onto his truck on weekends when he had more room. He didn't have pallets with him when he returned from making deliveries on February 7, 2013, because he was going to pick them up later.

B. **Respondent's Evidence.**

1. See Count A, Respondent's evidence, 1 through 4.

2. Steve Miller stated that Damon Nelson called him to report that he had seen Complainant dropping pallets off at the pallet house. When Complainant returned from his route he asked Complainant where his pallets were. Complainant told him that he had dumped his pallets. He told Complainant he had been observed selling the pallets and that he was going to discuss the matter with William Sullivan and Marc Troop (white, non-Hispanic), President.

3. Driver expectations state that violations, incidents and damage to vehicles needed to be immediately reported to management. Product shortages, returns or product damage needed to be communicated to office staff upon checkout **(Exhibit F)**.

4. An undated document regarding Driver responsibilities for trucks and signed by Complainant states that all Drivers were responsible for properly taking care of their trucks. All damage to trucks while on route should be reported immediately upon coming in. Anyone with more than three "at fault" accidents during a two year period was subject to immediate dismissal **(Exhibit C)**.

5. An undated document regarding reminders states that Drivers who get to a customer and are short product must call the office so a determination can be made how to handle the situation. Customer returns were not to be thrown away **(Exhibit D)**.

6. An undated notice regarding pick up slips, perishables and crates states that Respondent had to pay for crates that were not picked up. Drivers needed to pick up all crates **(Exhibit E)**.

7. An undated notice regarding paperwork states that Drivers were responsible for completing a daily packet of paperwork for their route. This packet included mileage, invoices, vendor pickups, product returns and the number of milk crates collected **(Exhibit G)**.

8. A February 26, 2013, statement from Damon Nelson (white, non-Hispanic), Driver, states that Nelson witnessed Complainant selling pallets to Bollita Pallet

Charge No.: 2013CF2356
Page 6 of 9

          Repair located at 2013 W. Ferdinand in Chicago on February 5, 2013 **(Exhibit H)**.

9. A February 26, 2013, statement from Steve Miller states that an employee informed Miller that another employee was seen with a stack of pallets at a pallet exchange company. When Complainant came in Miller confronted him about the lack of pallets being returned. After Complainant informed Miller that he got rid of them Miller told Complainant that he no longer worked for Respondent **(Exhibit I)**.

10. A February 25, 2013, memo from Dan Sullivan states that Complainant called Sullivan about an hour after he was discharged. Complainant asked Sullivan to put in a good word for him and stated that he didn't think selling pallets was a big deal **(Exhibit J)**.

11. Steve Miller stated that Complainant was discharged due to theft. Two other employees accused of theft, Edward Camacho (non-black, Hispanic), Warehouse Manager, and Jose Dominguez (non-black, Hispanic), Driver/Salesman, were discharged in March 2009 for taking product out of the building. Miller stated that he was not aware of any other similarly situated employees.

12. William Sullivan stated that after Damon Nelson called to report he had seen Complainant selling pallets, Steve Miller told him that he had spoken with Complainant, who told him he had dumped all his pallets. William Sullivan stated that Complainant was discharged for stealing.

13. William Sullivan stated that all of Respondent's trucks had a space on them for stacking empty pallets. Complainant's contention that he had no room on his truck for pallets after he made his deliveries didn't make sense.

14. Complainant conceded he had plenty of room on his trucks for empty pallets.

15. Dan Sullivan stated that Complainant called him after he was discharged. Complainant apologized for taking the pallets but told him it wasn't a big deal because everybody did it. Sullivan stated that he wasn't aware of any other Driver selling Respondent's pallets.

C. **Complainant's Rebuttal.**

1. Complainant stated that he wasn't aware of any other employee who was accused of stealing. Respondent tracked milk crates but didn't start tracking pallets until after he was fired.

**Staff notes:**

1. See Count A, Staff notes 1 and 2.
2. In response to the Department's questionnaire, Respondent indicated it had no written discharge policy.

Case: 1:14-cv-09546 Document #: 1-3 Filed: 11/28/14 Page 10 of 12 PageID #:31

Charge No.: 2013CF2356
Page 7 of 9

3. In response to a staff request for information, Respondent indicated that it could not locate discharge documents for Edward Camacho and Jose Dominguez because Respondent upgraded its computer system in March 2010.

**Analysis:**

There is no evidence that Complainant was discharged due to his race or his ancestry. It is uncontested that on February 5, 2012, Complainant returned from making his deliveries without any pallets. It is uncontested that Truck Drivers are expected to return all pallets to Respondent. The investigation revealed that Complainant was discharged for stealing pallets. The investigation revealed that other similarly situated non-black employees were also discharged for similar behavior.

**Findings and Conclusion-Counts B and C:**

A finding of <u>lack of substantial evidence</u> is recommended because:

Complainant was discharged for stealing. There is no evidence of a similarly situated non-black, non-Hispanic employee being treated more favorably in a similar situation. There is no evidence that Complainant was discharged due to his race, black, or his ancestry, Hispanic.

**Complainant's Allegations-Count D:**

Between October 22, 2010, and February 5, 2013, Complainant engaged in protected activities when he complained to Steve Miller, Dock Manager, and Melissa Keller, Secretary, about discrimination based on his race. On February 5, 2013, Complainant was discharged. Complainant alleges that the discharge followed his protected activity within such a period of time as to raise an inference of retaliatory motivation.

**Respondent's Defenses-Count D:**

Respondent denies that Complainant engaged in a protected activity.

**Investigation Summary-Count D:**

A. **Complainant's Evidence.**

   1. See Count A, Complainant's evidence, 1 through 3.

   2. See Counts B and C, Complainant's evidence, 2 and 3.

   3. Complainant stated that he was discharged after he told Melissa Keller that he was going to see an attorney. Respondent discharged him because they were tired of hearing him complain.

B. **Respondent's Evidence.**

   1. See Count A, Respondent's evidence, 1 through 4.

   2. See Counts B and C, Respondent's evidence, 2 through 13.

C. **Complainant's Rebuttal.**

   1. See Counts B and C, Complainant's rebuttal, 1 and 2.

**Staff notes:**

1. See Count A, Staff notes 1 and 2.
2. See Counts B and C, Staff notes 1 and 2.

**Analysis:**

There is no evidence that Complainant was discharged in retaliation for engaging in a protected activity. The investigation revealed that Complainant was discharged for stealing pallets.

Complainant stated that that the majority of his protected activities consisted of written complaints of harassment on his daily route sheets. He stated that he discussed his complaints of harassment with Melissa Keller, a non-management employee, on numerous occasions. He further stated that he also complained to Steve Miller about the harassment on a regular basis until he stopped talking to Miller in February 2012.

Steve Miller stated that Complainant never complained to him of racial harassment. A review of Complainant's daily route sheets shows no evidence of written harassment complaints.

**Findings and Conclusion-Count D:**

A finding of <u>lack of substantial evidence</u> is recommended because:

Complainant was discharged for stealing. The investigation does not support Complainant's contention that he repeatedly submitted written complaints of discrimination and Respondent denies knowledge of any verbal harassment complaints. Further, Complainant stated that the last time he spoke with management to report the alleged racial harassment was in February 2012. The one-year period between Complainant's alleged protected activity and his discharge is wholly insufficient to establish an inference of retaliatory motivation. There is no evidence that Complainant was discharged in retaliation for engaging in a protected activity.

**Witness List:**

A. Complainant (ffc)
  2620 W. Division St., Apt. #2B
  Chicago, IL 60622-3343
  (773) 219-8653

B. William Sullivan (white, non-Hispanic), Treasurer (ffc)
  MT Food Service, Inc.
  400 N. Noble St.
  Chicago, IL 60622

    (312) 733-7028

C. Steve Miller (white, non-Hispanic), Dock Manager (ffc)
  C/o William Sullivan
  MT Food Service, Inc.
  400 N. Noble St.
  Chicago, IL 60622
  (312) 733-7028

D. Marc Troop (white, non-Hispanic), President (ffc)
  C/o William Sullivan
  MT Food Service, Inc.
  400 N. Noble St.
  Chicago, IL 60622
  (312) 733-7028

E. Dan Sullivan (white, non-Hispanic), Controller (telephone interview)
  C/o William Sullivan
  MT Food Service, Inc.
  400 N. Noble St.
  Chicago, IL 60622
  (312) 733-7028

### Exhibits:

A. Verified response.
B. Vacation and Days off Policy.
C. Undated document regarding Driver responsibilities.
D. Undated document regarding reminders.
E. Undated notice regarding pick up slips, perishables and crates.
F. Driver expectations.
G. Undated notice regarding paperwork.
H. February 26, 2013, statement from Damon Nelson.
I. February 26, 2013, statement from Steve Miller.
J. February 25, 2013, memo from Dan Sullivan.
K. Daily route sheets for the period between February 8, 2012, and February 7, 2013.

IRSHELL
Rev 11/09